GUARANTEED BILLINGS RECRUITMENT AGREEMENT
BETWEEN MICHAEL BOUTON, M.D.
AND MEMORIAL HERMANN HOSPITAL SYSTEM

This Agreement is entered into effective as set forth herein by and between Memorial Hermann Hospital System, a Texas non-profit corporation (hereinafter referred to as "MHHS") and Michael Bouton, M.D., a physician licensed to practice medicine in the State of Texas.

WITNESSETH

WHEREAS, MHHS owns and operates Memorial Hermann Memorial City Hospital, an acute care hospital (hereinafter referred to as "Hospital");

WHEREAS, MHHS has determined that there is a need for medical services for residents of the geographic area served by Hospital and MHHS desires to expand the availability of such services to residents of the geographic served by Hospital through financially assisting Michael Bouton, M.D. with the opening of his medical practice in such geographic area;

WHEREAS, Michael Bouton, M.D. desires to provide services to members of the geographic area served by Hospital on a long-term basis;

NOW, THEREFORE, in consideration of the premises and mutual covenants contained in this Agreement, the parties hereto agree as follows:

I. Commitment of MHHS.

    1.1 Benefits. In consideration of the need of the residents of the geographic area served by the Hospital (the "geographic area" or "community") for quality general surgery services, and the agreement of Michael Bouton, M.D. to establish and maintain an office in the geographic area and to provide such services to the community in accordance with the terms of this Agreement, MHHS agrees to provide Michael Bouton, M.D. the following benefits:

        1.1.1 Guarantee. MHHS hereby agrees to provide a private practice billings guarantee to Michael Bouton, M.D. upon the terms and conditions provided herein.

        1.1.2 Guaranteed Monthly Billings. MHHS guarantees that if Michael Bouton, M.D. complies with the terms hereof, Michael Bouton, M.D. will be able to bill for his medical services no less than $46,400.00 per month, after taking into account adjustments to his billings as provided below, for each month during the twelve (12) month period beginning the 1st day of March, 2007 and ending the last day of February,

**EXHIBIT A**

2008. The excess of guaranteed billings over adjusted billings shall be paid by MHHS to Michael Bouton, M.D., subject to the terms of this Agreement.

   1.1.3 "Adjusted Billings" Computation. All billings remain the property of Michael Bouton, M.D. "Adjusted Billings" for a month shall include the gross amount Michael Bouton, M.D. would be entitled to bill for services rendered during such month, utilizing his standard rates as mutually agreed to by Michael Bouton, M.D. and MHHS, decreased by adjustments for (a) discounts for charity patients, (b) discounts for Medicare and Medicaid patients and patients in similar government sponsored programs, and (c) discounts required by managed care contracts governing patients' payment rates, and increased by adjustments for (d) unbilled patients as provided below. Charity patients shall be determined utilizing MHHS's standards of indigency, as amended from time to time. Michael Bouton, M.D. shall promptly bill for all his professional services and his billings shall be adjusted by adding each month during the term his billings are guaranteed appropriate amounts with respect to patients for whom he provided services during such month but did not bill. Income earned from professional services in and outside the Hospital community such as from "moonlighting," lectures, medical director fees and the like shall be included in "Adjusted Billings." Michael Bouton, M.D. may bill at other than his mutually agreed upon standard rates; provided, that his "Adjusted Billings" shall include amounts determined by using the higher of (i) his rates actually used, or (ii) his mutually agreed upon standard rates, and then adjusting such amounts with respect to discounts and indigency as provided above.

   1.1.4 Office Start Up Expenses. MHHS agrees to reimburse Michael Bouton, M.D. up to $27,000.00 in expenses he incurs to establish his medical office in the community, including expenses related to the acquisition of equipment, furniture, supplies, personnel, rent and insurance costs, and moving and buildout costs, upon submission of invoices and receipts for such expenses. MHHS also agrees to pay Michael Bouton, M.D. the sum of $10,000.00 upon execution of this Agreement, or, if later, upon licensure to practice medicine in Texas. Sums provided under this Section 1.1.4 are in addition to those provided under Section 1.1.2.

   1.1.5 Waiver of Repayment. Subject to all of the terms of this Agreement, including Section 3.2.7, Michael Bouton, M.D. shall not have to repay to MHHS the sums correctly advanced and/or paid by MHHS to Michael Bouton, M.D. hereunder in consideration of the complete performance by Michael Bouton, M.D. of all of his responsibilities and obligations under this Agreement to MHHS and to members of the community, including but not limited to the indigent and patients whose bills are paid by government sponsored programs such as Medicare and Medicaid. In the event Michael Bouton, M.D. breaches this Agreement or does not provide services to the community during the full term hereof, subject to the provisions hereof regarding death, disability and/or illness, all amounts, advances and sums paid him by MHHS shall be treated as loans and shall be paid by him to Hospital on demand, with interest at the rate designated by JP Morgan Chase Bank, N.A. as its prime or base rate plus one percent, from the date received by him until payment by him to the Hospital.

1.1.6 <u>Adjustments, Reconciliation and Overpayments</u>. For each of the first twelve (12) months under this Agreement, the correct amount to which Michael Bouton, M.D. and MHHS are respectively entitled hereunder shall be determined as follows. No later than ten (10) business days after the close of each month, Michael Bouton, M.D. shall provide to MHHS complete billing records and service records of Michael Bouton, M.D. in a signed summary showing amounts billed and services rendered by Michael Bouton, M.D. during such month in a format approved by MHHS. The amount of adjusted billings with respect to services rendered during such month shall be determined as provided above.

In addition to the other adjustments provided for herein, the parties shall from time to time reconcile billings and payments hereunder at the request of either party, and each shall pay on demand the other sums due by reason of underpayment or overpayment. In addition to collection of such amounts by other lawful means, MHHS may collect overpayments by offset. Amounts advanced and/or paid by MHHS in excess of sums owed by MHHS under Article I shall not be forgiven under Article I.

II. <u>Commitment of Michael Bouton, M.D.</u>

2.1    <u>Fees and Expenses</u>. All professional fees charged by Michael Bouton, M.D. shall belong solely to Michael Bouton, M.D. Michael Bouton, M.D. shall bill appropriate payors directly for all medical services performed by him. Michael Bouton, M.D. shall be solely responsible for the collection of his patient accounts and payments of his expenses.

2.2    <u>Offices and Medical Services</u>. Michael Bouton, M.D. shall, on or before the 1st day of March, 2007, open and staff an office suitable for the practice of general surgery and shall engage in the full-time private practice of medicine, specializing in the practice of general surgery, in the community, throughout the term of this Agreement. During the term of this Agreement, Michael Bouton, M.D.'s "full-time private practice of medicine" shall mean Michael Bouton, M.D.'s devotion of an average of at least forty hours per week to the practice of medicine in his office or hospitals in the geographic area served by the Hospital and the maintenance of regular office hours with a staffed office in the geographic area served by the Hospital at least forty hours a week, reasonable vacations and holidays excepted, with his practice of medicine to include but not be limited to service to the indigent, Medicare and/or Medicaid patients, members of managed care health programs and health maintenance organizations, as well as other members of the geographic area served by the Hospital, on a non-discriminatory basis. Indigency or charity status shall be determined by reference to the standards utilized by the Hospital. Michael Bouton, M.D. agrees and acknowledges that the primary motivation of Hospital in providing the billings guarantee to Michael Bouton, M.D. hereunder is the agreement of Michael Bouton, M.D. to provide services to the indigent and patients enrolled in government sponsored medical care programs such as Medicare and/or Medicaid, and that Michael Bouton, M.D. will provide care to such patients at a reasonable volume taking into account the needs of such members of the geographic area served by the Hospital and the availability to such patients of professional medical services of the type provided by Michael Bouton, M.D.

2.3  **Records.**  Michael Bouton, M.D. shall prepare or cause to be prepared accurate, comprehensive medical, financial and time records showing compliance with the terms of this Agreement and shall furnish such to Hospital as requested for reconciliation and compliance confirmation purposes. The reports provided by Michael Bouton, M.D. reflecting professional medical services and billings rendered to secure a payment of income guarantee amounts as provided hereinabove shall include such information and details as might be required by the Hospital to reflect such services to members of the community and compliance with the terms of this Agreement.

2.4  **Medical Staff Duties.**  Michael Bouton, M.D. shall complete and file an application for membership on the Medical Staff of Hospital no later than the 1st day of January, 2007, and become and continue during the term of this Agreement to be a member in good standing of the Medical Staff of Hospital, and comply fully with all bylaws, rules and regulations of the Medical Staff. Michael Bouton, M.D. during the term of this Agreement shall further discharge all administrative and professional responsibilities of a member of the Medical Staff of Hospital, including but not limited to, emergency room and call duty.

2.5  **Privileges.**  Failure to apply for and gain appointment and privileges at Hospital within a reasonable time after execution of this Agreement, or refusal or suspension or loss of Medical Staff privileges at Hospital by Michael Bouton, M.D. will result in immediate termination of this Agreement. Michael Bouton, M.D. acknowledges that he has received and has read a copy of the Medical Staff Bylaws of Hospital. Michael Bouton, M.D. represents that he is aware of nothing in his background and experience that would prevent him from becoming a member of the Medical Staff of Hospital and maintaining that membership during the term of this Agreement. Nothing in this Agreement shall limit Michael Bouton, M.D.'s obtaining medical staff appointment and clinical privileges at any other hospital or health care facility.

2.6  **Licensure.**  Throughout the term of this Agreement, Michael Bouton, M.D. agrees to maintain his State of Texas medical licensure, and to remain eligible to participate in federal and state health care programs, and, if a foreign citizen, to have and maintain appropriate visa authorization to work in the U.S.A.

2.7  **Insurance.**  Michael Bouton, M.D. shall obtain and carry, at no cost to Hospital, professional liability insurance covering Michael Bouton, M.D. and all of his personnel in an amount not less than that required for membership on the Medical Staff of Hospital, throughout the term of this Agreement.

2.8  **Community Services.**  Michael Bouton, M.D., agrees, in addition to providing the professional medical services to members of the community as provided elsewhere herein, to provide to members of the community educational programs at the Hospital; to participate actively in community service projects including but not limited to health fairs; to provide inservice education to nursing and allied healthcare employees and agents of the Hospital; and, to provide consultation and chart review for the Hospital Risk Management Department upon request.

2.9 <u>Representations of Recruit; Stark Law Compliance</u>. Michael Bouton, M.D. hereby warrants and represents to MHHS that:

(i) he has full power and authority to lawfully enter into this Agreement and perform services hereunder;

(ii) his entry into this Agreement does not and shall not conflict with any agreement to which Michael Bouton, M.D. is a party;

(iii) he shall not enter into any agreement with any third party that conflicts with his duties and obligations hereunder, including but not limited to any agreements containing covenants not to compete, and/or agreements for the recruitment of Michael Bouton, M.D. by any third party to serve another community;

(iv) he will not remit to any physician or physician group which he joins, or with which he shares offices, directly or indirectly, recruitment expenses of such physician or physician group, except for actual recruitment costs incurred by such physician or physician group;

(v) he shall not remit to any physician or physician group whose practice he joins, or with which he shares offices, amounts in excess of actual additional incremental costs attributable to his employment or engagement by such physician or physician group;

(vi) he shall prepare or cause to be prepared, and shall maintain records of the actual costs and the pass through amounts which he agrees to pay such physician or physician group, or with which he shares offices, for a period of five (5) years, and shall make available such records to MHHS or the Secretary of the Department of Health and Human Services, or his agent or successor upon request;

(vii) he shall not enter into any agreement with any physician or physician group which he may join, or be employed or engaged by, or share offices with, which imposes additional practice restrictions upon him, other than conditions related to the quality of care; and

(viii) he will incorporate into any agreement he enters with any physician or physician group during the term hereof a provision that such agreement is subject to the terms of this Agreement.

Michael Bouton, M.D. agrees during the term of this Agreement not to compete with MHHS through a direct or indirect financial interest in a health care facility which is in competition with an MHHS acute care facility. A health care facility is in competition with an MHHS acute care facility if it (a) is located within five (5) miles of an MHHS acute care facility, and (b) offers health care services in competition with those provided at such MHHS facility. A "direct or indirect financial interest" in a health care

5

facility includes but is not limited to a direct or indirect ownership interest in a health care facility, and/or a compensation arrangement, between Michael Bouton, M.D., or his family, employers, partners or affiliates and a health care facility, but does not include practicing medicine at or referring patients to a health care facility.

Michael Bouton, M.D. shall immediately notify any third party seeking Michael Bouton, M.D.'s entry into any agreement with terms conflicting with this Agreement that such an agreement would constitute tortious interference with the obligations owed by Michael Bouton, M.D. under this Agreement. Michael Bouton, M.D. shall immediately notify MHHS in the event any third party attempts to secure an agreement conflicting with the terms hereof.

2.10   Choice of Facilities. The parties hereto expressly agree and hereby state that the billings guarantee and other consideration hereunder are in no way contingent upon Michael Bouton, M.D.'s utilization of MHHS's or Hospital's facilities. Michael Bouton, M.D. shall use his independent medical judgment in choosing or recommending a hospital or other health care facility for any inpatient care, outpatient care or ancillary services such as laboratory and radiology. Further, the parties acknowledge that consideration paid hereunder is not payment for patient referrals. Michael Bouton, M.D. shall not be compensated for any referrals or admissions to or use of Hospital.

III.   Term and Termination.

3.1   Term. This Agreement shall be effective as of the date executed by the parties hereto, for a term of service to the community from the 1st day of March, 2007, through the last day of February, 2010, unless sooner terminated as provided in Section 3.2.

3.2   Termination. This Agreement may be terminated as provided in this Section 3.2.

3.2.1 Loss of Privileges. This Agreement shall terminate immediately if Michael Bouton, M.D. fails to obtain and/or maintain privileges and membership on the Medical Staff of Hospital.

3.2.2 Loss of Licensure; Loss of Legal Authority. This Agreement will terminate immediately if during the term of this Agreement Michael Bouton, M.D. fails to maintain his license to practice medicine in the State of Texas, and/or any failure to remain eligible to participate in any federal and state health care program, and/or to have or maintain appropriate visa status to perform services hereunder if Michael Bouton, M.D. is not a U.S. citizen.

3.2.3 Mutual Agreement. In the event that the parties shall mutually agree in writing, this Agreement may be terminated on the terms and dates stipulated therein.

3.2.4 **Abatement**. If Michael Bouton, M.D. is unable to provide medical care to members of the community due to illness, medical condition or injury of Michael Bouton, M.D. the medical service obligations of Michael Bouton, M.D. hereunder shall be abated for the period of time Michael Bouton, M.D. is unable to provide the required medical services to members of the community (the "Service Abatement Period"); provided, if such period of time exceeds four (4) months, MHHS shall have the right to terminate this Agreement on or after the expiration of such four (4) month period during which Michael Bouton, M.D. is unable to provide medical care. Such termination shall not constitute a breach by Michael Bouton, M.D., and the repayment of amounts advanced and/or paid prior to such period of time by MHHS to Michael Bouton, M.D. shall be waived in accordance with the terms of Article I. During the term of the Service Abatement Period, the Hospital shall not be obligated to and does not guarantee the billings of Michael Bouton, M.D. Michael Bouton, M.D. agrees to extend his services to the community as required hereunder for a period of time equal to the Service Abatement Period.

3.2.5 **Good Cause**. Hospital may terminate this Agreement for good cause upon seven (7) days written notice to Michael Bouton, M.D. For purposes of this Section, good cause shall include, but shall not be limited to, breach of this Agreement, fraud, misappropriation of funds, inability to work cooperatively with members of the Medical Staff or Administration or personnel of Hospital, moral turpitude, non-performance of the conditions stated in this Agreement, or if this Agreement is required to be renegotiated or revised by any third party payor, governmental agency, or other agency which may have control over physician contracts or control over any part of this Agreement. Prior to termination for inability to work with members of the Administration or personnel of Hospital, Hospital shall notify physician in writing at least fourteen (14) days in advance of termination of Hospital's complaint(s) in this regard. Further, Hospital, with seven (7) days written notice to Physician, may terminate this Agreement if Physician's practice of medicine is not in accordance with generally accepted medical standards in the service area of the Hospital.

3.2.6 **Legal Developments**. Michael Bouton, M.D. shall repay to MHHS any amounts paid hereunder by MHHS which are determined by a court or governmental agency to be illegal or inconsistent with the status of MHHS as an organization exempt from federal income taxes. In the event of such a determination, MHHS may terminate this Agreement. If any legislation, governmental regulation or rule or court decision is promulgated or rendered which would cause the continuation of this Agreement to affect either party hereto in a materially adverse manner, such as adversely affecting licensure or tax exempt status, the parties shall attempt to amend this Agreement so as to conform with such new legislation, regulation, rule or decision and avoid such adverse effects. If the parties are unable to mutually agree as to appropriate amendments, this Agreement may be terminated by either party with ten (10) days notice, and such a termination shall not constitute a breach by either party hereto.

3.2.7 **Effects of Termination or Breach and Repayments**. Upon termination or breach of this Agreement, Michael Bouton, M.D., shall not be entitled to

any further advances or grants pursuant to this Agreement. Upon breach of this Agreement by Michael Bouton, M.D., Michael Bouton, M.D. shall repay to MHHS all sums of money advanced and/or granted and/or paid by MHHS to Michael Bouton, M.D. hereunder, notwithstanding any provisions for the forgiveness thereof provided elsewhere herein. Michael Bouton, M.D. hereby grants MHHS a security interest in and to his accounts receivable, and his furniture, fixtures and equipment utilized by him in the practice of medicine, and in the event of a breach of this Agreement by Michael Bouton, M.D., MHHS may declare obligations to it hereunder due and payable and proceed to exercise any and all of the rights of a secured party under the Uniform Commercial Code and at law or in equity with respect to such assets including the sale thereof. The parties hereto agree such amount is an appropriate approximation of the costs and expenses to secure medical services for the community by a professional such as Michael Bouton, M.D., which are not capable of precise calculation, and such repayment is not a penalty.

       3.2.8   Death of Physician. If Michael Bouton, M.D. dies during the term of this Agreement, this Agreement shall automatically terminate and such termination shall not constitute a breach of this Agreement requiring repayment of sums advanced Michael Bouton, M.D. during the term hereof.

   3.3   Right of First Refusal. If at any time during the term of this Agreement Michael Bouton, M.D. shall receive a bona fide Offer (the "Offer") to purchase his medical practice (the "Practice") and if the price and terms and conditions of the Offer are acceptable to Michael Bouton, M.D. and if Michael Bouton, M.D. intends to accept the Offer, then Michael Bouton, M.D. shall give to MHHS written notice (the "Purchase Notice") of the Offer stating the price and other significant terms and conditions set forth in the Offer, and shall make available to MHHS at such time copies of all documents and information supplied by Michael Bouton, M.D. to such party making the Offer and all pertinent data regarding the Practice. MHHS shall, after MHHS and Michael Bouton, M.D. comply with all the requirements of law, have the exclusive right and option (the "Right of First Refusal") to purchase the Practice of Michael Bouton, M.D. on materially the same terms and conditions set forth in the Offer (or such changes as shall be necessary to affect the substitution of substantially equivalent economic consideration for any unique consideration provided for in the Offer). If MHHS desires to exercise the Right of First Refusal, MHHS shall provide written notice (the "Acceptance") to Michael Bouton, M.D. within thirty (30) days after the date MHHS receives the Purchase Notice and the required related information ("Review Period"). If MHHS elects to exercise the Right of First Refusal, then the sale of the Practice to MHHS shall be consummated in accordance with the terms of the Offer (or with such changes as shall be necessary to effect substitution of substantially equivalent economic consideration as provided above) on or before the later to occur of either (i) thirty (30) days after the effective date of the Acceptance, or (ii) the date provided for consummation in the Offer, if any. If MHHS fails to provide Michael Bouton, M.D. with the Acceptance within the Review Period, MHHS shall be deemed to have elected not to exercise the Right of First Refusal. Michael Bouton, M.D. then may, at his sole and exclusive remedy accept the Offer upon the terms and conditions thereof and agree to sell the Offered Interest (definition equals the Practice of Michael Bouton, M.D.) to the Offeror; however,

Michael Bouton, M.D. and Offeror may make minor and immaterial changes to the Offer. If the Offer is not so accepted or if the sale to the Offeror is not consummated in substantial conformity with the terms and conditions stated in the Offer on or before the later of one hundred and twenty (120) days from the date of the Purchase Notice, or the date provided in the Offer for consummation as the same may reasonably be extended, then the Purchase Notice shall be deemed to have expired and a new Notice and Option shall be required prior to the sale of the Practice by the Michael Bouton, M.D. Notwithstanding anything contained herein to the contrary, the terms of this Paragraph 3.3 are not intended to prohibit or restrict Michael Bouton, M.D. from negotiating the terms of a Proposed Offer or from accepting an Offer so long as Michael Bouton, M.D.'s Acceptance is made expressly subject to MHHS's Right of First Refusal right set forth herein. The Right of First Refusal granted to MHHS in this Agreement shall extend for six (6) months beyond the term of this Agreement set forth in Section 3.1.

3.4   Group Practice. Michael Bouton, M.D. and Hospital agree that Michael Bouton, M.D. during the term of this Agreement may provide services to the community as required hereunder as a solo practitioner, or as an employee, or as a partner or as a member of a group of physicians, as Michael Bouton, M.D. elects, in his sole discretion, subject to the terms of this Agreement, including Section 2.9. Hospital expressly disclaims any lien or encumbrance upon any property and any Right of First Refusal with respect to any property owned by any third party employer of Michael Bouton, M.D. If Michael Bouton, M.D.'s practice is owned by a legal entity in which he owns an equity interest, such equity interest shall be subject to the lien and to the Right of First Refusal in favor of Hospital provided for herein. If Michael Bouton, M.D. practices with a group in any capacity, Michael Bouton, M.D. shall maintain or cause to be maintained separate records regarding services to the community by Michael Bouton, M.D. as required hereunder, and such group and its members shall not be entitled to any payments hereunder from MHHS.

IV.   Independent Contractor. Michael Bouton, M.D. and Hospital agree that Michael Bouton, M.D. shall employ his own means and methods and exercise his own independent medical judgment in his practice of medicine and the performance of all professional services for his patients, including Michael Bouton, M.D.'s selection of hospitals for admission of or services for his patients. Michael Bouton, M.D. will not be subject to the control or direction, or right of control or direction, of MHHS or the Hospital with respect to such means, methods or judgment. The objective of MHHS in this Agreement is to encourage Michael Bouton, M.D. to practice medicine and provide quality professional services to patients in the Hospital's service area. Both parties agree that this Agreement does not create an employer/employee, principal/agent, servant/borrowed servant, partnership, or joint venture relationship between Michael Bouton, M.D. and the Hospital or MHHS.

V.   Compliance.

5.1   Access to Books and Records of Subcontractors. Notwithstanding anything to the contrary in this Agreement, if it shall be determined or asserted that this Agreement is a contract between a provider and a subcontractor within the meaning of

Section 1861 (v)(1)(I) of the Social Security Act or any rules, regulations, or judicial or administrative interpretations or discussions promulgated or made pursuant thereto, then Michael Bouton, M.D. agrees, that until the expiration of four (4) years after the furnishing of any service pursuant to this contract, such subcontractor shall make available, upon written request to the Secretary of the Department of Health and Human Services (the "Secretary") or upon request to the Comptroller General, or any of their duly authorized representatives, this contract, and books, documents and records of such subcontractor that are necessary to certify the nature and extent of the cost incurred by MHHS with respect to this Contract and the services provided pursuant hereto. Nothing in this Section shall be construed to permit the subcontractor to carry out any of the duties of this contract through a subcontract, and such is expressly prohibited. All financial records of Michael Bouton, M.D. pertaining to his professional practice shall be kept by Michael Bouton, M.D. complete and accurate and in accordance with generally accepted accounting principles, and upon request shall be made available to MHHS. Michael Bouton, M.D. agrees to comply with the obligations set forth in Article VI following termination of this Agreement.

5.2   Governmental Program Compliance.  Michael Bouton, M.D. represents and warrants to MHHS that neither Michael Bouton, M.D. nor any of Michael Bouton, M.D.'s affiliates (i) are excluded or suspended from participation in any federal or state health care program for the provision of items or services for which payment may be made under a federal or state health care program, as exclusion, participation and federal or state health care program are defined under 42 USC § 1320(a)-7b(f); (ii) Michael Bouton, M.D. and Michael Bouton, M.D.'s affiliates have not arranged or contracted for services, directly or indirectly, by employment or otherwise, with any other party that Michael Bouton, M.D. and/or Michael Bouton, M.D.'s affiliates know, or should know, are excluded or suspended from participation in any federal or state health care program; and (iii) no final adverse action has occurred, or is pending or is threatened against Michael Bouton, M.D. or any of Michael Bouton, M.D.'s affiliates, or any of their agents, as the term "final adverse action" is defined under 42 USC § 1320(a)-7e(g).  Michael Bouton, M.D. during the term of this Agreement shall immediately notify MHHS of any basis for exclusions or adverse actions against Michael Bouton, M.D. and/or any of Michael Bouton, M.D.'s affiliates or any of their agents or any basis therefor. Michael Bouton, M.D. agrees, on request from MHHS, to provide MHHS sufficient information and data necessary for MHHS to determine the compliance by Michael Bouton, M.D. and/or Michael Bouton, M.D.'s affiliates and/or their agents with the requisites of any federal or state health care program as to which there is any question of compliance.  MHHS retains the right to terminate this Agreement upon notice of non-compliance with the requisites of any federal or state health care program by Michael Bouton, M.D. and/or Michael Bouton, M.D.'s affiliates and/or their agents which in the opinion of MHHS would or could result in civil monetary penalties being imposed against MHHS as a result of arranging or contracting for the provision of services to MHHS by Michael Bouton, M.D. and/or Michael Bouton, M.D.'s affiliates or agents as provided by 42 USC § 1320(a)-7a(a)(6), or any successor provision thereto, or regulations promulgated thereunder.

5.3 <u>Relocation to Geographic Area Served by the Hospital</u>. Michael Bouton, M.D. hereby warrants and represents to MHHS that he, by establishing his office in the geographic area served by the Hospital as provided herein, will be relocating his practice from another geographic area. Michael Bouton, M.D. will be considered to have relocated his medical practice if (i) he is a resident without a current medical practice, or (ii) he has been in practice for one (1) year or less, or (iii) he moves his medical practice at least twenty-five (25) miles; or (iv) his new medical practice in the geographic area served by the Hospital derives at least seventy-five percent (75%) of its revenue from his professional services furnished to patients, including hospital in-patients, not seen or treated by him at his prior medical practice during the preceding three (3) years, as measured on an annual basis; provided that during his initial year in the geographic area served by the Hospital there is a reasonable expectation his medical practice for the year will derive at least seventy-five percent (75%) of its revenue from professional services rendered patients not seen or treated by him at his prior medical practice site during the preceding three (3) years. Michael Bouton, M.D. has had an opportunity to review the Hospital's community needs analysis determining the geographic area served by the Hospital.

VI. <u>Notice</u>. Any notice, demand or communication required, permitted or desired to be given under this Agreement shall be deemed effectively given when personally delivered or mailed by prepaid certified mail, return receipt requested, addressed as follows:

    If to Michael Bouton, M.D.:

        To the residence of Michael Bouton, M.D., as last provided
        by Michael Bouton, M.D. to the Hospital's medical staff
        offices.

    If to MHHS:

        Memorial Hermann Hospital System
        7737 Southwest Freeway, Suite 200
        Houston, Texas 77074
        Attention: Chief Executive Officer

    With Copy to:

        Memorial Hermann Hospital System
        7737 Southwest Freeway, Suite 200
        Houston, Texas 77074
        Attention: Chief Legal Counsel

VII. <u>Assignment</u>. Neither party may assign any rights or obligations under this Agreement without the prior written consent of the other party to the Assignment; provided, MHHS may assign its rights and duties hereunder to an affiliate of MHHS or a successor in interest to the business and assets of MHHS. This Agreement is for the

benefit of the parties hereunder only and no other person shall be a third-party beneficiary of this Agreement nor shall any other person be entitled to rely on this Agreement.

VIII.   Amendments and Contract Execution. This Agreement shall be in writing and executed in multiple copies by the parties hereto. Each multiple copy shall be deemed an original, but all multiple copies together shall constitute one and the same instrument.

IX.   Severability. In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

X.   Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

XI.   Waiver of Breach. A waiver by either party of a breach or failure to perform under this Agreement shall not constitute a waiver of any subsequent breach or failure.

XII.   Articles and Other Headings. The articles and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

XIII.   Conflict. In the event of any conflict between the provisions of this Agreement and the Hospital's Medical Staff Bylaws, this Agreement shall control.

XIV.   Remedies. In the event either party hereto resorts to legal action to enforce any of the terms and/or provisions of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable expenses incurred in such action, including, without limitation, court costs and attorneys' fees.

XV.   Financial Relationship Records. This Agreement is incorporated in the master list of physician financial relationships maintained by MHHS and is available upon request for review by representatives of the federal government.

XVI.   Entire Agreement. The parties acknowledge and agree the amounts of income and expenses shown in surveys utilized by the parties to determine approximate expenses of a medical practice and revenue therefrom are based upon averages and norms, and MHHS makes no warranties or representations to Michael Bouton, M.D. that he will make any particular amount of revenue or have any particular type or amount of expense, and further, MHHS makes no representations or warranties as to the accuracy of any surveys or data utilized to make income and/or expense projections. Michael Bouton, M.D. acknowledges that he is solely responsible for his performance of his obligations hereunder, and his success or failure in establishing a practice in the community, and/or collecting his bills, and paying and managing his expenses. This Agreement constitutes the entire agreement of the parties to this

Agreement with respect to the subject matter hereof, and supersedes all proposals or other prior agreements, oral or written, and all other communications, oral or written.

IN WITNESS WHEREOF, the parties have executed this Agreement in multiple originals effective as of the date provided herein.

MEMORIAL HERMANN HOSPITAL SYSTEM, d/b/a Memorial Hermann Memorial City Hospital

By: *David L Jones*
Name: David L Jones
Title: CEO
Date: 1/22/2007

PHYSICIAN

*Michael Bouton M.D.*
Michael Bouton, M.D.
U.P.I.N.: E66990
Social Security No.: 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
Date: 1/22/07

APPROVED AS TO FORMAT:

*Robert Park*
LEGAL DEPARTMENT

MHMC-BoutonM-GBRA-GeneralSurgery-011707

13