IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEMORIAL HERMANN HOSPITAL SYSTEM<br>Plaintiff, | § § § § | |
| V. | § | CIVIL ACTION NO 4:10-CV-1161 |
| MICHAEL BOUTON, M.D.<br>Defendant. | § § § § § | |

## DEFENDANT MICHAEL BOUTON, M.D.'S ORIGINAL ANSWER AND COUNTERCLAIMS TO PLAINTIFF MEMORIAL HERMANN HOSPITAL'S ORIGINAL COMPLAINT

Defendant Michael Bouton, M.D. ("Bouton") files his Original Answer and Counterclaim to the Original Complaint of Plaintiff Memorial Hermann Hospital System ("Plaintiff" or "MHHS") and alleges as follows:

### I. SPECIFIC DENIALS

1. Bouton admits the allegations in paragraph 1.

2. Bouton admits the allegations in paragraph 2, except Bouton may be served through his attorney of record, Harry L. Scarborough, 1010 Lamar, Suite 1020, Houston, Texas, 77002.

3. Bouton admits the allegations in paragraph 3.

4. Bouton admits the allegations in paragraph 4.

5. Bouton states he lacks sufficient information to form a belief as to the truth of the allegations in paragraph 5, except Bouton admits he is a physician licensed to practice medicine in the State of Texas.

6. Bouton denies the allegations in paragraph 6 to the extent they summarize and inaccurately state the terms, meaning and intent of Guaranteed Billings Recruitment Agreement dated January 22, 2007 ("Agreement"), attached as Exhibit A. Bouton admits Exhibit A is a true and correct copy of the Agreement. The Agreement

speaks for itself.

7. Bouton denies the allegations in paragraph 7 to the extent they summarize and inaccurately state the meaning and intent of the Agreement attached as Exhibit A. Bouton admits Exhibit A is a true and correct copy of the Agreement. The Agreement speaks for itself.

8. Bouton denies the allegations in paragraph 8 to the extent they summarize and inaccurately state the terms, meaning and intent of the Agreement attached as Exhibit A. Bouton admits Exhibit A is a true and correct copy of the Agreement. The Agreement speaks for itself.

9. Bouton denies the allegations in paragraph 9 to the extent they summarize and inaccurately state the meaning and terms of the letter dated April 21, 2008, which speaks for itself. Specifically, the referenced letter does not state, "he was resigning his privileges at Memorial Hermann Memorial City Medical and that the last day he would be available to take calls would May 3, 2008."

10. Bouton denies the allegations in paragraph 10 to the extent they summarize and inaccurately state the terms, meaning and intent of the referenced letter, which speaks for itself. Specifically the letter does not state "Defendant's intention to breach the Agreement by closing his practice and refusing to take calls." Further, Plaintiff's Demand Letter to Dr. Button, attached as Exhibit B, states a different total ($546,800.77) than Plaintiff alleges it demanded in paragraph 10 ($544,800.77)

11. Bouton denies the allegations in paragraph 11.

12. Bouton admits the allegations in paragraph 12.

13. Bouton denies the allegations in paragraph 13 to the extent they summarize and inaccurately state the terms, meaning and intent of the Agreement. Bouton denies all other allegations in paragraph 13.

14. Bouton denies the allegations in paragraph 14.

15. Bouton denies the allegations in paragraph 15.

## II. AFFIRMATIVE DEFENSES

17. MHHS' claims are barred by the doctrine of estoppel.

18. MHHS' claims are barred by the doctrine of release.

19. MHHS' claims are barred by the doctrine of waiver.

20. MHHS' claims are barred by the doctrine of offset.

21. MHHS' claims are barred by the doctrine of failure of consideration.

22. MHHS' claims are barred by discharge or MHHS' prior breach of the contract.

23. MHHS' claims are barred by the doctrine of anticipatory repudiation.

24. MHHS' claims are barred by the doctrine of substantial or partial performance and divisibility.

25. MHHS' claims are barred by the doctrine of failure to mitigate.

26. MHHS' claims are barred by the doctrine of fraudulent inducement.

27. MHHS' claims are barred by the doctrine of unclean hands.

27. MHHS' claims as related to Section 1.1.5 and the terms of the Agreement, which would require Bouton to repay the same amount whether he terminated the Agreement within 1 day or 2.99 years, are an unenforceable penalty.

28. MHHS' claims are barred on the basis that the terms and conditions of the Agreement were impossible for Bouton to perform.

## III. DEFENDANT MICHAEL BOUTON, M.D.'S COUNTERCLAIM

### A. FACTS

29. Bouton incorporates paragraphs 1 through 4 above.

30. Bouton is a physician who is or was licensed to practice medicine in the State of Arkansas, the State of Texas and the State of North Dakota during the period relevant to this suit.

3

31. Bouton and MHHS executed the Agreement dated January 22, 2007, which is attached as Exhibit A.

32. MHHS made representations to Bouton to induce him to enter into the Agreement and leave a long-established, successful and busy practice in Arkansas. Based on MHHS' representations, Bouton uprooted his family, including a child in the middle of high school, and relocated to Houston pursuant to the Agreement.

33. MHHS represented to Bouton that there was a need for breast surgeons in the geographic area served by the Memorial Hermann Memorial City Hospital ("Hospital").

34. In fact, on page 1 in the preamble of the Agreement, MHHS represented to Bouton "WHEREAS, MHHS has determined that there is a need for medical services for residents of the geographic area served by Hospital (Memorial Hermann Memorial City) and MHHS desires to expand the availability of such services to residents of the geographic served by Hospital through financially assisting Michael Bouton, M.D. with the opening of his medical practice in such geographic areas."

35. Also, on page 1 in paragraph 1.1 of the Agreement, MHHS further represented "the need of the residents of the geographic area served by the Hospital (the "geographic area" or "community") for quality general surgery services."

36. Bouton made every effort to build a practice consistent with his expectations based on the representations by MHHS. Specifically, Bouton advertised to the medical community and the public, took calls at Memorial Hermann Memorial City and Memorial Hermann Katy Hospitals by waiver of the bylaws as a result of his personal request, appeared on both television and radio as an expert in breast services, participated in public educational seminars, held an open house, visited individual physicians at multiple locations, created a website, sent two mailings to over 500 physicians in his service area, advertised in the Memorial Hermann Memorial City patient booklet, and joined 29 managed care plans, including Memorial Hermann Health Network Providers,

4

Medicare, and Medicaid.

37. Despite these diligent efforts at his sole expense, Bouton was unable to build his practice at the rate and to the extent represented by MHHS, as evidenced in a letter dated January 30, 2008 by David L. Jones, CEO, Memorial Hermann Memorial City Medical Center. In his letter, Dr. Jones acknowledges that expectations as to the growth of Bouton's practice did not work out as mutually desired.

38. Bouton was not able to develop his practice for one simple reason. The "need for medical services for residents of the geographic areas served by the Hospital and MHHS" as represented by MHHS to Bouton and made the basis of the Agreement did not exist.

39. The reasons the represented need did not exist were primarily the result of the actions of MHHS. MHHS represented to Bouton that he would play an integral role in establishing the Bobetta Lindig Breast Center which, according to MHHS, was designed to be a comprehensive breast center in which surgeons and radiologists would provide diagnostic biopsies and other services. However, between the time Bouton executed the Agreement and moved to Houston, MHHS, with no notice to Bouton, awarded an exclusive use contract for the breast center to a radiology group, which severely limited Bouton's access to the center. MHHS also represented to Bouton that he would have the use of a significant amount of office space adjacent to the breast center. Again, upon arriving in Houston, Bouton realized MHHS misrepresented the amount of space available to Bouton next to the breast center.

40. MHHS also represented to Bouton that he would benefit from the overflow of breast patients from Dr. Jo Pollock, which did not exist. Dr. Pollock referred few, if any, patients to Bouton.

41. MHHS failed to timely disclose to Bouton the anticipated and subsequent effect of the scheduled opening in late 2006 of MHHS' newly constructed hospital in Katy, which significantly decreased any need for his services that may have existed to successfully establish

Bouton's practice.

42. Some individuals who attended recruitment meetings between MHHS and Bouton were David Jones, CEO, Jeffrey Nowlin, COO, Cyndi Pena, Physician Liaison, Lisa Kendler, CFO, Deborah Enany, Director of Marketing and Business Development, Marsha Bourgeois, Director of Business Development, Jo Pollock, M.D., and Teresa Hagmann and Peter Khoury of Sphinx Consulting. In these meetings, MHHS represented to Bouton that he was being recruited to provide breast services in conjunction with the opening of the Center; share call with Dr. Pollock because there was a large number of breast patients that were not being seen in a timely manner and Bouton's presence would fill this need; and that there would be space available in the new building adjacent to the Center for Bouton to set up a clinic.

43. As early as May 2007, there were written communications and meetings between Bouton and MHHS, including, but not limited to, Cyndi Pena, Deborah Enany, Jeff Nowlin, Theresa Hagmann, David Jones, Lisa Kindler, Sonya Ochoa. The topics discussed were the absence of overflow patients from Dr. Pollock, the Center, the availability of space to set up an office next to the Center, and the omission in the MHHS estimate of the costs to move and set up a second office during the term of the Agreement. In an email from Bouton dated May 15, 2007 to Deborah Enany, he stated "I am progressively disillusioned that most of what I was brought here for; such as helping develop the breast center, and the need to handle an excess of patients that Dr Pollock could not service, is not the reality."

44. Based on information and belief, MHHS failed to disclose to Bouton information about problems getting other physicians to take calls with Dr. Pollock and the fact that Dr. Pollock had been asked to leave her previous surgery group at Memorial Hermann Memorial City.

45. It was impossible for Bouton to establish a viable surgical practice pursuant to the terms and conditions of the Agreement as a result of misrepresentations by MHHS. Faced with the decision to stay at MHHS and go bankrupt or secure a position where his services were truly

needed, Bouton accepted an offer of $325,000 per year and set up a practice in North Dakota. In his new practice in North Dakota, Bouton saw more patients in his first month than in any of the 14 months he practiced in Houston. In addition, Bouton was successful in getting his current practice location accredited as one of the first 50 breast centers in the country from the National Accreditation Program for Breast Centers (something MHHS has not done). Bouton is chairman of the Breast Study Group and the Breast Tumor Conference. Bouton is active in the North Dakota Center Coalition, and he is the Cancer Liaison Physician for The American College of Surgeons Commission of Cancer for his hospital. Bouton has received two awards at his current hospital for patient care.

### B. BREACH OF CONTRACT

46. Bouton incorporates paragraphs 32 thru 45.

47. MHHS and Bouton entered into the Agreement attached as Exhibit A.

48. Bouton closed his long-time, successful practice in Arkansas and moved to Houston and opened a new practice pursuant to the Agreement. Bouton made diligent efforts at his sole expense to build a practice in Houston based on the representations by MHHS as stated in paragraphs 32 thru 45.

49. MHHS failed to perform its duties and obligations pursuant to the Agreement to the extent MHHS acted in a manner inconsistent with or failed to act in a manner consistent with its representations to Bouton and as stated in the Agreement, as evidenced by paragraphs 32 thru 45.

50. As a result of MHHS' acts and/or omissions resulting in MHHS' breach of the Agreement, Bouton suffered damages as more specifically described below.

### C. FRAUDULENT INDUCEMENT

51. All conditions precedent to the enforcement of the Agreement have been satisfied or excused.

52. Bouton incorporates paragraphs 32 thru 45.

53. MHHS and Bouton entered into the Agreement attached as Exhibit A.

54. MHHS made representations to Bouton regarding material facts for the purpose of inducing Bouton to enter into the Agreement, as evidenced by paragraphs 32 thru 45.

55. MHHS' representations to Bouton were false.

56. MHHS knew its representations were false when made or were made recklessly or without knowledge of or disregard for the truth.

57. MHHS intended that Bouton act on its representations, and Bouton suffered economic damages as a result of his reliance on MHHS' misrepresentations.

58. MHHS made misrepresentations by failing to disclose to or concealing from Bouton one or more material facts with respect to the Agreement when circumstances imposed a duty to speak and MHHS remained silent.

59. MHHS voluntarily represented "the need for medical services for residents of the geographic area served by Hospital and MHHS," the opportunity for Bouton to play an integral role in establishing the Bobetta Lindig Breast Center ("Center"), the availability of significant office space next to the Center for use by Bouton, and the benefit to Bouton from the overflow of patients from Dr. Pollock. As a result, MHHS had a duty to (1) disclose the whole truth and (2) disclose new information that made earlier representations misleading or untrue and (3) disclose additional facts where a partial disclosure conveyed a false impression.

60. Bouton suffered economic damages as a result MHHS' failure to disclose facts as required by its duty to Bouton, which are more specifically described below.

### D. TOTAL DAMAGES FOR MICHAEL BOUTON, M.D.

61. Michael Bouton, M.D. has incurred the following damages:

    a. Loss of the benefit of the bargain:   $900,000.00

    b. Reliance damages:   $855,000.00

    c. Consequential damages:   $95,000.00

### E. ATTORNEYS' FEES.

62. In order to prosecute his claims, it was necessary for Bouton to employ attorneys. MHHS is liable to Bouton for reasonable expenses incurred in this action, including without limitation, court costs, expenses, and reasonable and necessary attorneys' fees pursuant to Section 38.001, *et sec.*, Texas Civil Practice & Remedies Code and Section XIV of the Agreement.

## IV. JURY DEMAND

63. Defendant Michael Bouton, M.D. hereby demands a trial by jury on all issues of fact.

## V. REQUEST FOR RELIEF

Defendant Michael Bouton, M.D. requests that the Court, after notice and hearing or trial, enter judgment in favor of Defendant, award Defendant his actual, direct, consequential, and special damages in an amount to be determined, costs of court, attorney's fees, pre- and post-judgment interest at the maximum rate provided by law, and such other and further relief as Defendant may be entitled to in law or in equity.

>  /s/Harry L. Scarborough
> Harry L. Scarborough
> State Bar No. 24027838
> Federal Bar No. 27018
> 1010 Lamar, Suite 1020
> Houston, Texas 77002
> (713) 222-6400 - Office
> (713) 222-7240 – Fax
> harry@fscounsel.com
> *Attorney-in-Charge*

OF COUNSEL:

FAUBUS & SCARBOROUGH LLP

Paula J. Wilder
State Bar No. 00792915
Federal Bar No. 19031

## CERTIFICATE OF SERVICE

This certifies that a copy of this document has been served upon the following counsel of record on May 14, 2010, as follows:

*Via Electronic Case File:*

Fred Wahrlich, Attorney-in-charge
Randy A. Canche
Munsch Hardt Kopf & Harr, P.C.
700 Louisiana, Suite 4600
Houston, Texas 77002

/s/Harry L. Scarborough
Harry L. Scarborough